the opinion that a plaintiff should proceed at law when his right to so proceed is accorded him.

It is apparent from the foregoing that it is the opinion of this court that these cases ought not to be consolidated; that as they stand with the amendment to the prayer, they are actions at law; that as such no referee ought to be appointed and the respective defendants are entitled to try their cases to a jury, and that the petition of the plaintiff does not in law show any case which entitles it to a restraining order enjoining the defendants from proceeding with separate trials of their several cases.

The demurrer is sustained and the restraining order is denied.  Let an entry be drawn accordingly.

---

### INDEMNITY BOND HELD TO BE ASSIGNABLE WITHOUT SPECIAL LANGUAGE IN INSTRUMENT.

Hamilton County, Court of Common Pleas.

## GEORGE W. CLEPHANE, v. THE PROGRESSIVE REALTY & BUILDING COMPANY, ET AL.

Decided, June 4, 1927.

*Bonds—Assignability of Contracts not Involving Personal Services— Indemnity Bond Runs to Assignee of Obligee, When.*

1. A party to a contract may assign all his beneficial rights thereunder, if no personal relation is involved, unless there is something in the terms or nature of the contract which indicates an intention of the parties that the contract is not to be assigned.
2. An indemnity bond, running to a lumber company, guaranteeing it against loss in furnishing building materials in accordance with the instructions of the obligor, runs also in favor of the assignee of the lumber company, although the instrument contains no provision for assignment.
3. A petition seeking to recover on such a bond, which avers that "there is now due and remaining unpaid the sum of $15,000," raises a presumption that there has been a violation of the bond, and is good against demurrer, although possibly open to attack by a proper motion for failure to aver that the conditions of the bond have been broken.

*Lorbach & Garver,* For the Demurrer.
*W. W. Clippinger,* Contra.

SHOOK, J.:

Defendant herein demurred to the petition for the reason that the facts stated do not constitute a cause of action against defendants.

Plaintiff, George W. Clephane, is the assignee of The Settle Lumber Company. The defendants, the Progressive Realty & Building Company, as principal, and William C. Tatman and Adda R. Tatman, as sureties, executed a bond in the sum of $15,000, by which they agreed to pay the Settle Lumber Company for all lumber and other building materials theretofore furnished, and to be furnished, in accordance with orders from the Progressive Realty & Building Company.

The bond was executed by the principals on May 29, 1924; on January 29, 1926, the Settle Lumber Company assigned all of its property and assets to George W. Clephane. Both instruments are attached to the petition and made a part thereof.

The defendants demur on two grounds:

1. That the bond does not run to plaintiff but to the Settle Lumber Company, and should contain some language evidencing the right to assign, in the absence of which it is the contention of defendants that the rights under the bond were not assignable. Further, that there is nothing in the bond itself which shows that it is assignable to plaintiff or to anyone else but that its terms are confined to the obligors and The Settle Lumber Company.

2. There is nothing in the petition to show that the conditions of the bond have been broken.

With reference to the first proposition, the general rule is that a party to a contract may assign all his beneficial rights, except where a personal relation is involved, (R. C. L. Sup. Vol. 6, page 105).

An example of a non-assignable contract is found in the case of *Smith et al.* v. *Board of Education* etc., 115 Kas., 155. The first syllabus reads:

"A contract with a board of education for the services of a partnership firm of two architects to make plans and specifications for a schoolhouse and to perform the incidental services usual to such employment is a contract for personal services requiring special knowledge, skill and taste, and involving the element of personal confidence, and is unassignable; and a change in the personnel of the firm whereby the services of one of the architects were not available rendered the contract of employment unenforceable against the board of education."

The Language apropos to this situation is found on page 157:

"The propriety of the judgment depends chiefly on whether the contract was for personal services of the partners composing the firm of Smith, Beattie & Co.    The business of an architect has the dignity of a learned profession.    A competent architect is a person of peculiar skill and taste.    He must be a man of culture, of disciplined mind, artistic eye, and trained hand; he must be able to visualize the possibilities of beauty and harmony in proportionate arrangement and construction of brick and stone and cement and steel; and he must have the art and deftness to set down his ideas with such precision in specifications and blue prints that contractors and workmen can readily follow them with fidelity.    Moreover, he must be a man of the highest probity, zealous to see that his designs are fashioned of good materials and good workmanship, so that the finished edifice will endure and be worth its cost to his employer.    All these qualifications of a personal nature are involved in any prudent contract for the services of an architect."

The distinction between the two cases is readily perceived.

The case of *Albery et al.* v. *Thompson et al.*, 10 O. N. P. (n. s.) 230, seems to be conclusive.    The petition in that case showed that three persons as partners entered into a written agreement with the defendant, Thompson, whereby the former for certain prices to be paid by the latter were to furnish him the output of their creamery for a year, that Black, one of the defendants, for a consideration bound himself as surety for the faithful performance of

the contract by Thompson; that later one of the parties withdrew from the firm and assigned all his interest to the remaining partners; that the remaining partners performed their contract with Thompson, but that he defaulted in payment for the output, whereupon the succeeding partners, plaintiffs, sued Thompson on the contract, and Black on his contract of suretyship or guaranty. The court says, in overruling the demurrer, page 231:

"The original transaction was a private contract between two parties, to furnish the principal defendant the output of their factory for one year on certain terms. The general rule is that such contracts are assignable (4 Cyc., 20, and cases). There are exceptions, as therein stated, but the case before us does not come within any of such exceptions. See page 22, supra, and cases. It is laid down in 2 Current Law, 147, that where the guaranty is of a contract already made which is definite in extent and amount, unless the contrary appears to be the intention of the parties, it is assignable along with the principal debt.' In support of the foregoing proposition the case of *Am. Bond & T. Co.* v. *B. & O. S. W. R. Co.,* 124 Fed., 866, is cited, the syllabus of which is:

'1. The rule settled by the Supreme Court is that a contract by which one partly became obligated to the other is assignable by the latter, unless there is something in the terms or nature of the contract which evidences an intention of the parties that it should not be assignable.' "

Further, on page 232 is the following language:

"The cases relied upon as authority to support the contention that the guaranty in question was not assignable, are those wherein the future conduct of the obligee may or may not render the obligor liable, and are not those where there is a definite contract between the original parties to which the guaranty is collateral. Letters of credit and the like have no binding force until the original contract between the creditor and the principal is executed. But in the case at bar the contract between the original parties was definite and fixed in amount and extent, at the time it was signed and delivered, and the guarantor knew at the very time he executed the contract the extent of his liability; not in dollars and cents, but so far as the amount and extent of Thompson's liability was concerned, namely, the liability to pay for the output of the factory for one year.

See also an interesting case on this subject, *Levy* v. *Cohen et al.*, 92 Supp. (N. Y.), 1074, the syllabus of which is:

'A contract by M to build a synagogue for a congregation being assignable, a guaranty to pay him for the work, if the congregation failed to do so, is a general and not a special guaranty, so that M may assign it with the contract and the guarantors be liable to the assignee.' "

The case of *Bonding & Trust Co.* v. *R. R. Co.*, 124 Fed., 866, cited in the Albery case, *supra*, is also directly against the contention of the defendants herein. In that case receivers of the Railroad made a contract with a contractor for certain betterments of the road, and took a bond from the contractor for the performance of the contract, and thereafter on the sale of the road by the court, assigned the contract and bond to the purchaser; it was held that the assignment was valid and vested the assignee with the right to maintain an action on the bond. The first four syllabi are conclusive:

"1.   Assignments—Validity—Contracts assignable.

The rule settled by the decisions of the Supreme Court is that a contract by which one party became obligated to the other is assignable by the latter unless there is something in the terms or nature of the contract which evidences an intention of the parties that it should not be assignable.

2.   Receivers for railroad property, appointed pending the foreclosure of mortgages thereon, under authority from the court entered into a contract for certain betterments to be paid for from the proceeds of receivers' certificates, which were made a first lien on the property and its earnings, and the contractor gave bond with a surety for the due performance of the contract. Pending the work the property was sold under the foreclosure decree, and conveyed to the purchaser, subject to all contracts made and liabilities incurred by the receivers, for the protection of which the court reserved judisdiction over the property. The contract and bond were also assigned by the receivers to the purchaser, which performed the contract on its part until the work was abandoned by the contractor. *HELD*, that there was nothing in the nature of the contract in-

dicating an intention that it should not be assignable by the receivers, but that, in view of the fact that they were known to be officers of the court temporarily in charge of the property, which was likely to be sold at any time, and that the court had power to protect the rights of the contractor, as it in fact did, it must be presumed, in the absence of any provision to the contrary in the contract itself, that it was the intention that it should be assignable in case of a sale of the porperty; that the assignment was, therefore, valid, and vested the assignee with the right to maintain an action on the bond given by the contractor.

3. A clause of such contract, giving the receivers the right to cancel the same at any time at their option, did not indicate an intention that it should not be assignable, but should be canceled in case of a sale of the property.

4. The fact that the bond of the contractor was a contract of guaranty did not render its assignment by the obligees invalid, since it was a guaranty of performance of a contract already in existence, and the terms of the obligation were not changed, nor the surety's liability increased by the assignment."

In other words, the rule is, that a contract is assignable unless there is something in the terms or nature of the contract which indicates an intention of the parties to the contract, that such a contract is not assignable. Upon considerable reflection we have come to the conclusion that this was an assignable contract and that George W. Clephane, plaintiff, is the real party in interest.

With reference to the second point, that there is nothing in the petition to show the condition of the bond was broken, this objection might be made by a proper motion, but on demurrer the language in the petition to the effect that there is now due and remaining unpaid the sum of $15,000.00, raises a presumption that there has been a violation of the bond.

The demurrer is therefore hereby overruled. An entry may be presented accordingly.